UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM HEATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 13-11176-FDS |
| ) | |
| SETERUS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This action arises from a home mortgage foreclosure. Plaintiff William Heath brought suit in state court against Seterus, Inc., and the Federal National Mortgage Association ("Fannie Mae") for alleged violations of law stemming from proceedings to foreclose on his home. The state court granted Heath's motion to enjoin a pending foreclosure sale of the property; defendants then removed the action to this Court. Heath seeks a determination that the notice of his right to cure provided by defendants was invalid, and therefore cannot serve as the basis for a valid foreclosure and sale.

Defendants have moved for summary judgment. For the reasons set forth below, the motion will be denied.

**I.    Background**

    **A.    Factual Background**

On May 13, 2005, William Heath refinanced the mortgage on his home in Mattapan,

Massachusetts. He granted a mortgage in the amount of $400,000 to Wachovia Mortgage Corporation, with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee. As part of the mortgage process, Heath also provided a note, endorsed in blank, in the same amount.

Shortly thereafter, Heath fell behind on his mortgage payments. He was given a loan modification in May 2007, and apparently became current on his payments for a time. He again fell behind on payments, and on March 7, 2011, the loan servicer—then known as Lender Business Process Services, since renamed Seterus, Inc.—sent him a notice of default. The terms of that notice, as described below, are at the center of this dispute.

Following the notice of default, Heath was given a second loan modification in April 2011. He once again was unable to keep up with payments. In March 2012, Heath's mortgage was assigned from MERS to Fannie Mae. A foreclosure sale was scheduled for May 10, 2013.

### B.     Procedural Background

On April 25, 2013, Heath commenced the present action against Fannie Mae and Seterus in the Suffolk County Superior Court. At the same time, he moved for a preliminary injunction to prevent defendants from moving forward with the foreclosure sale. On May 9, the state court judge granted Heath's motion for a preliminary injunction. On May 13, defendants removed the case to this Court. On May 29, defendants moved for summary judgment or, in the alternative, to vacate the state court injunction.

## II.    Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the

moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court must indulge all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III.   Analysis

Plaintiff contends that defendants have not complied with the requirements for a lawful notice of his right to cure his default, and therefore are prohibited from foreclosing on his home. Defendants counters that the notice of default was proper, and that they are entitled to summary judgment as a result.

Massachusetts law provides that mortgagors are entitled to an opportunity to cure a mortgage default prior to foreclosure. Mass. Gen. Laws ch. 244 § 35A. Pursuant to the statutory scheme, a mortgagee that seeks to accelerate or foreclose on a mortgage must notify the mortgagor of his right to cure, and "shall not" enforce the mortgage until at least 150 days after such notification has been provided. *Id.* The notice must be "given by the mortgagee to the

mortgagor," and must provide the mortgagor with certain information, including the nature of the default, the date by which the mortgagor may cure the default, the name and address of the mortgagee, and the telephone number for a representative of the mortgagee whom the mortgagor may contact. *Id*. Section 35A further provides that "[t]he mortgagor shall not be liable for any attorneys' fees relating to the mortgagor's default that are incurred by the mortgagee or anyone holding thereunder prior to or during the period set forth in the notice required by this section." *Id.*

Plaintiff does not contest that defendants provided plaintiff with a letter on March 7, 2011, that was intended as a notice of his right to cure. He contends, however, that the notice failed to comply with the terms of § 35A, and was therefore ineffective. He identifies two alleged deficiencies in the letter: first, that it conditioned his right to cure on payment of prohibited attorneys' fees; and second, that it failed to identify the name and address of the mortgagee.

### A. Attorney's Fees

The March 7, 2011 notice of default included a summary of "past due installments" (including principal, interest, and escrow charges). There followed an itemized listing of "other open charges." (Def. MSJ, Ex. C). For each potential "other open charge," there were three columns: one listing "prior service charges," one listing charges from the current servicer, and one setting forth the total amount attributable to those charges. (*Id.*). The notice to Heath listed additional "other open charges" for "foreclosure ($75.00), "valuations" ($78.00), "property inspections" ($298.00), and "late charges" ($1,790.78). (*Id.*).

One of the categories of "other open charges" was "legal attorney." Under that heading,

4

the notice listed prior service charges of $0.00, current service charges of $0.00, but a total of $575.00. (*Id.*). The apparent discrepancy—the total charge did not match the subtotal charges—was not explained in the notice.

Defendants contend that the "legal attorney" charge was not incurred as part of the present default, but rather was carried over from plaintiff's prior default in 2006. (Def. MSJ at 4). Defendants have produced an affidavit from Seterus employee Bryan Wilson. In his affidavit, Wilson states that the $575 in legal fees "were carried over from the initial 2006 default," and "have no association whatsoever with the present default." (Wilson Aff. ¶ 12). Wilson cites to the March 2011 notice itself in support of this statement. Wilson also attests that "[a]pproximately one month after the Notice of Default was sent to the Borrower, the $575 in legal fees was paid off as part of the second loan modification that was given to the Borrower." (*Id.* at ¶ 13).

As a threshold matter, this Court notes that plaintiff contests defendants' characterization of the origin of the attorney's fee. Plaintiff notes that while fees such as valuation and property inspections that were incurred by prior servicers were listed in the "prior servicer charges" section for other charges, no charge is listed under that section for attorney's fees. Plaintiff also points out that defendants have produced no other records demonstrating that the attorney's fees truly originated from events leading up to plaintiff's 2007 modification.

In any event, defendants make two arguments that the inclusion in the notice letter of $575 in attorney's fees did not violate §35A. First, defendants argue that the statute's proscription of attorney's fees that were incurred "prior to" the cure period refers only to attorney fees that were incurred "from the time the present default began through the cure

period." (Def. MSJ at 4). Thus, defendants suggest that a mortgagee may condition a mortgagor's right to cure on the payment of attorney's fees that resulted from previous defaults.

While defendants' understanding of the statute makes a certain amount of sense, it does not appear to be supported by its plain language. The statute does not say that a mortgagor shall not be liable for attorneys' fees incurred between the time of default and the end of the cure period; it says that a mortgagor shall not be liable for any such fees incurred "*prior to*" or during the cure period. The term "prior to" is not ambiguous, and the Court is bound to interpret it as written. The attorneys' fees that were included in the March 2011 notice letter were clearly incurred prior to the cure period, and are therefore covered by the plain language of the statute.[1]

Defendants suggest that the Court's reading of the statute creates the unreasonable result that a mortgagee can never recover legal fees from a prior default. However, as plaintiff points out, mortgagees have the ability to incorporate outstanding legal fees into the terms of a loan modification, or to recover them through the foreclosure process. Mortgagees also retain the option of charging such fees at the close of the cure period. While the Court's reading prevents a mortgagee from adding attorneys' fees to a right-to-cure notice letter, it does not prevent a mortgagee from ever recovering such fees.

Second, defendants contend that the inclusion in the notice letter of $575 in attorney's fees did not violate §35A because it could not have prevented or discouraged the borrower from bringing his loan current. In light of an overdue amount of more than $33,000, defendants suggest that the Court need not be concerned that a $575 attorneys' fees charge actually

---

[1] Section 35A bars only those attorneys' fees that "relat[e] to the mortgagor's default." Thus, it is at least possible that fees that were incurred prior to the current default, such as those included here, do not "relate" to that default. However, defendants have not made that argument here, and the Court therefore need not address it.

interfered with plaintiff's ability to cure his default. While defendants' argument again makes sense, the issue again is the wording of the law as enacted by the Massachusetts legislature. Here, the legislature did not bar the inclusion of significant attorneys' fees, or a charge so large that it might prevent or discourage a borrower from curing the default; it barred the inclusion of *any* attorneys' fees.

In short, the inclusion of $575 in attorneys' fees in the notice letter appears to have violated the terms of Mass. Gen. Laws ch. 244 § 35A, thereby rendering the notice ineffective. Accordingly, defendant's motion for summary judgment and to vacate the preliminary injunction will be denied.

### B.     Identification of the "Mortgagee"

Plaintiff also challenges the adequacy of the right-to-cure notice on the ground that it failed to identify the name and address of the mortgagee, as required by § 35A. Although the Court will address the issue, it will not resolve it at this stage in light of its denial of summary judgment on the issue of attorneys' fees.

The March 2011 right-to-cure notice does not anywhere use the word "mortgagee." Instead, it identifies IBM Lender Business Process Services, Inc. ("LBPS") as the servicer of plaintiff's loan. It also includes an address for LBPS, as well as a telephone number. (Def. MSJ, Ex. C).

Defendants make two arguments in support of the adequacy of the letter, both of which involve legal issues that are currently the subject of significant uncertainty. First, defendants contend that a loan servicer is a "mortgagee" for purposes of § 35A, and that the notice complied with the statute by identifying LBPS as the servicer and providing the company's name and

address.  Second, defendants contend that the letter provided notice that contained all relevant information and was not confusing, and thus fulfilled the purposes intended by the statute.

Section 35A provides that a right-to-cure notice shall inform the mortgagor of several categories of information, including "the name and address of the mortgagee or anyone holding thereunder."  Mass. Gen. Laws ch. 244 § 35A(c)(4).  The statute does not include a definition of "mortgagee."

There is disagreement among the courts as to whether a mortgage servicer may constitute a "mortgagee" for purposes of § 35A.  In *Eaton v. Federal National Mortgage Association*, 462 Mass. 569, 571 (2012), the Supreme Judicial Court construed the legislature's use of the term "mortgagee" in another section of Mass. Gen. Laws ch. 244, and determined that the term "mortgagee" meant the "person or entity then holding the mortgage."  That definition excluded the mortgage servicer from the definition of "mortgagee" under those provisions.  The SJC further stated that "[w]here the Legislature uses the same words in several sections which concern the same subject matter, the words must be presumed to have been used with the same meaning in each section."  *Eaton*, 462 Mass. at 583.  Multiple courts have read *Eaton* to suggest that § 35A requires the identification of the present holder of the mortgage, and have accordingly held that cure notices that identified the mortgage servicer as the mortgagee failed to comply with § 35A.  *See, e.g., Bravo-Buenrostro v. OneWest Bank*, No. 11-03961 (Suffolk Super. Ct., May 31, 2012) (holding that, under § 35A, the "'mortgagee, or anyone holding thereunder' language refers exclusively to the current holder of the mortgage").

Other courts, including this one, have held that a mortgage servicer may properly identify itself as the "mortgagee" in a right-to-cure notice.  *See Foregger v. Residential Credit Solutions,*

*Inc.*, 2013 U.S. Dist. LEXIS 87546, at *34-35.  Those courts have generally relied on regulations promulgated by the Massachusetts Divisions of Banks pursuant to the statute.  Those regulations define "mortgagee" as

> an entity to whom property is mortgaged, the mortgage creditor or lender including, but not limited to, mortgage services, lenders in a mortgage agreement and any agent, servant, or employee of the mortgagee or any successor in interest or assignee of the mortgagee's rights, interests, or obligations under the mortgage agreement.

209 C.M.R. 56.02.  Those courts have accordingly held that identification of a mortgage servicer is sufficient for purposes of § 35A.

At oral argument, plaintiff's counsel set forth several reasons why the legislature might have intended to require the name and address of the holder of the mortgage, and not simply a mortgage servicer, in the right-to-cure notice.  Specifically, plaintiff's counsel indicated that the holder of the mortgage would be a necessary party to any litigation a mortgagor could bring to stop a foreclosure, and the identity of the holder of the mortgage could have implications for the modification options available to a mortgagor.  Plaintiff also contends that the Massachusetts legislature considered, but rejected, potential language for § 35A that would have allowed the cure notice to identify "the mortgagee or servicer."  Because of the uncertainty surrounding the issue, and because it is not necessary to reach the issue to deny summary judgment, the Court will not resolve it at this stage.

Defendants' second argument essentially suggests that, even if there were minor defects in the right-to-cure notice, it was nonetheless sufficient to allow defendants to proceed with a foreclosure sale.  This argument raises a second much-debated question:  whether the law requires strict compliance with the terms of § 35A.

In Massachusetts, when a mortgage grants the holder the power of sale, a mortgagee may foreclose without obtaining prior judicial authorization. *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 288 (1st Cir. 2013). However, a mortgagee must "first comply [] with . . . the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." Mass. Gen. Laws ch. 183 § 21. Given this "substantial power . . . to foreclose without immediate judicial oversight," courts require that "one who sells under a power of sale must follow strictly its terms." *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 647-47, 650-51 (2011) (quoting *Moore v. Dick*, 187 Mass. 207, 211 (1905)). Thus, if a statutory provision is part of the Massachusetts "power of sale," a mortgagee may only lawfully foreclose on a mortgage if it has complied strictly with the terms of that provision.

The law is currently unclear as to whether the notice requirement of § 35A is part of the Massachusetts "power of sale," and must be complied with strictly. *Compare Courtney v. U.S. Bank*, 2013 U.S. Dist. LEXIS 16245, at *5 (D. Mass. Feb. 6, 2013) (finding a notice of default effective although it identified the original lender incorrectly) and *Payne v. U.S. Bank Nat'l Assoc.*, 2013 U.S. Dist. LEXIS 45734, at *3 (D. Mass. Mar. 28, 2013) (finding substantial compliance with the requirements of § 35A sufficient) *with Ross v. Deutsche Bank Nat'l Trust Co.*, 2013 U.S. Dist. LEXIS 47056, at *15-16 (D. Mass. Mar. 27, 2013) (stating that "[b]ecause the notice requirement is part of the Massachusetts statutory scheme regulating foreclosure, mortgagees seeking to foreclose must comply strictly with the notice requirement."). While plaintiff cites to a number of state and federal cases for the proposition that strict compliance with § 35A is required, many other courts have reached the opposite conclusion. Again, in light of the widespread uncertainty on this issue, and because it is not necessary to decide it, the Court

will not reach the issue.

### III. Conclusion

For the reasons set forth above, defendants' motion for summary judgment and to vacate the preliminary injunction is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge

Dated:  July 23, 2013